# United States Of America

# Federal District Court

Worcester, ss.                                            Civil Docket No.

| | |
|---|---|
| Tara McCrohan,                     ) | |
| Complainant                        ) | |
| v.                                 ) | |
| Uxbridge Police Association,       ) | |
|  Local #123, M.C.O.P., AFL-CIO;  ) | **COMPLAINT** |
| Isaiah Morisette individually      ) | |
| and as president of Local 123,     ) | |
| David Bergeron, individually       ) | |
| and as president of Local 123      ) | |
| _____  ) | |

## INTRODUCTION

This is a Complaint for unlawful discrimination committed by a Union and two of its member/officers based on gender, sexual orientation and disability. The complainant, Sgt. Tara McCrohan was at all times relevant to this Complaint an officer with the Uxbridge Police Department and member of the Uxbridge Local 123.  Ms. McCrohan was known to be a lesbian and as of the Spring of 2009 was known throughout the department to be suffering from Post-Traumatic Stress Disorder.  During the last year of her employment Ms. McCrohan was denied benefits of membership to which she was entitled, was publically defamed and humiliated and treated with contempt and ridicule based on her membership in protected classes and/or in retaliation against her for engaging in protected activities.

## FACTS

1. Tara McCrohan is an individual residing in the Town of Uxbridge, Massachusetts.

2. Josiah Morisette is an individual and a police officer employed by the Uxbridge Police Department ("UPD" hereinafter) and was the president of the Local Uxbridge 123 during

times relevant to the factual allegations included in this Complaint.  Out of respect for the officer's privacy,  his residential address is not included in this public document.

3.  David Bergeron is an individual and a police officer employed by the Uxbridge Police Department and a former president of the Local Uxbridge 123 during times relevant to factual allegations included in this Complaint.  Out of respect for the officer's safety his residential address is not included in this public document.

4.  Uxbridge Local 123 is a Union duly formed under the laws of the Commonwealth with a main office located at 275 Douglas Street, Uxbridge Massachusetts 01569.

## Jurisdiction

5.  Jurisdiction is proper because all events herein arise from the same nexus of facts and are violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 et seq.

## Venue

6.  Venue is proper in this Court because all parties reside and/or are located in Worcester County, Massachusetts.

## Facts

7.  Sergeant McCrohan, prior to her recent retirement, was a fifteen year veteran of the Uxbridge Police Department with a masters degree in criminal justice.  She is also a veteran of the armed forces who has served at least one tour of duty during the Iraq war.

8.  During the spring of 2009, Sgt. McCrohan entered treatment for post-traumatic stress disorder.

9.  In the weeks leading up to her entry into treatment, she was experiencing sleep deprivation and other symptoms of the disorder.

10. As a result, she had two minor car accidents in work vehicles and exhibited other behaviors that led the Chief of Police and other officers, including the president of the Uxbridge Local 123, David Bergeron, to discuss her potential PTSD and need for treatment.

11. Upon information and belief, Mr. Bergeron contacted "ON SITE ACADEMY" regarding Sgt. McCrohan and her potential need for treatment. On Site is a treatment facility that specializes in treating police officers with Post Traumatic Stress Disorder.

12. Upon information and belief, Chief Freitas told Mr. Bergeron that the UPD was considering requiring Sgt. McCrohan to undergo testing and possibly treatment for PTSD in order to ensure she was competent to perform the essential duties of her job.

13. Upon information and belief, Mr. Bergeron prevented that from happening when he told Chief Freitas that any issue with her need for treatment was "union business" and that the union would handle it.

14. Mr. Bergeron never enrolled Sgt. McCrohan in a program or discussed her need for diagnosis and treatment with her.

15. After several weeks without intervention and two minor work related car accidents, Sgt. McCrohan approached the Chief to inform him that she believed she might be suffering from PTSD.

16. Chief Freitas told Ms. McCrohan that he agreed that she was in need of treatment, and informed her that the Union stopped him from intervening weeks before this conversation.

17. Sgt. McCrohan underwent several weeks of full-time treatment and therapy after which she was cleared to return to work without restriction.

18. After returning to duty from treatment for PTSD Sgt. McCrohan confronted Mr.
Bergeron about the Union interference with the intervention, to which he replied that he
"decided he was not going to help her."

19. In August of 2009 Mr. Bergeron, who was replaced as president by Respondent Josiah
Morissette, demanded that Chief Freitas not allow Sgt. McCrohan to return to work
without a fitness for duty examination; thus delaying her return to work by several days.
Ms. McCrohan, who was already cleared to work as an officer by the On-Site medical
staff, also passed the additionally imposed fitness for duty exam.

20. During the summer of 2009 a citizen complained to Sgt. McCrohan regarding an
interaction between that citizen and an officer in the department.

21. Sgt. McCrohan forwarded the complaint to Chief Freitas, who initiated an investigation
resulting in that officer ultimately resigning from the department in lieu of discipline.

22. After that termination, the Uxbridge Local 123 took a vote of no confidence in Chief
Freitas. The Union published a letter, authored by Bergeron, expressing their concerns to
the Board of Selectman and the Chief that month, however, Ms. McCrohan was never
given a copy of the letter from the Union.

23. In that letter the Union makes several defamatory, untrue, reckless and malicious
statements about Sgt. McCrohan, her disability and her performance as an
officer/sergeant.

24. The letter was authored by former Local 123 President David Bergeron. The false,
malicious and/or reckless statements include, but are not limited to:

    a.  Accusing Sgt. McCrohan of violating orders from the Chief and threatening those
who follow those orders.  In fact, Respondent Isaiah Morisette filed a grievance

over this allegation which was summarily denied by the Department and the Board of Selectman.  This incident is described in more particularity starting in paragraphs 24-26 of this Complaint and serves as partial basis for the claims of unlawful discrimination against Respondent Morissette.

b. Accusing Sgt. McCrohan of violating departmental policies regarding motor vehicle chases and erroneously suggesting that she caused a motor vehicle accident with injuries to the driver.  In fact, Ms. McCrohan followed all traffic polices regarding pursuit and the subject of the chase, who was driving a dirt bike, crashed the bike in the woods, off of any public way when Sgt. McCrohan was not even inside her vehicle.

c. Accusing the Chief of refusing to discipline Sgt. McCrohan for departmental policy violations regarding paid time.  In fact, Sgt. McCrohan made an error with her paid time sheets during the interim where Respondent Bergeron was preventing her from receiving treatment.  She was formally disciplined and paid the town back in full for approximately three days of pay.

d. Mr. Bergeron published confidential information regarding her disability and medical treatment in the letter.

e. Accusing Sgt. Mccrohan of various other minor violations of policy and procedure in order to embarrass, humiliate and annoy her.

25. As evidence of the malicious intent of the letter and the double standard to which Sgt. McCrohan was subjected, the author of the letter has been the subject of multiple allegations of misconduct and citizen complaints that are far more egregious in nature than any of the accusations in the letter about Sgt. McCrohan.  However, upon

information and belief, the Union and its members have never issued a vote of no
confidence based on the lack of discipline for those allegations.

26. During the month of September the Chief of Police issued a zero-tolerance order
regarding incidents involving under-age drinking.  Respondent, Ofc. Isaiah Morissette
informed Sgt. McCrohan that he took this policy to mean that he should arrest any and all
underage citizens he discovered connected in any way to underage drinking. Sgt.
McCrohan told him that she believed the Chief did not intend for the zero-tolerance
policy to be construed so broadly.  As a result, she told him and all officers under her
command that during the first evening the new policy was in effect, she should be
notified of any citizen interactions in which the new policy would be contemplated and
she would make the final decision. She informed the officers that in the interim she
would clarify the policy with the chief.

27. Ofc. Morissette replied by telling Sgt. McCrohan that he would not violate the order and
that he would arrest any/all underage citizens connected in any way with an allegation of
underage drinking.  Sgt. McCrohan told him that she expected him to respect her
authority and that she would be "up his butt on every stop" if he made arrests without her
supervision prior to her clarifying the issue with the Chief.  She reiterated to the officers
that she did not believe the Chief intended for the policy to be so broadly construed and
did not want to see underage citizens of the Town arrested when other community
policing procedures could be employed and could be in accordance with the policy.

28. Ofc. Morissette filed a grievance against Sgt. McCrohan claiming that he felt threatened
and was a victim of a hostile work environment. The grievance was summarily denied.

29. Ofc. Morissette filed a second grievance regarding Sgt. McCrohan in September of 2009. The second grievance centered on the Respondent's disapproval of the manner in which the Complainant was disciplined in regards to an incident when he was bypassed an offer of over-time on dispatch.  That grievance was summarily denied as well.

30. In February of 2010, Sgt. McCrohan was placed on administrative leave related to alleged misconduct based on the publication of confidential information in which she identified that she thought she was a victim of harassment and was seeking the advice of an attorney.

31. Sgt. McCrohan contacted Isaiah Morisette, who was the president of the Union at the time, to contact the proper person to handle the grievance for her.  Mr. Morisette demanded that she reveal the contents of her grievance and refused to provide the requested information over a matter of days, until she informed him that she had been advised that she was entitled to the information without revealing sensitive and confidential information.

32. On or about June 1, 2010 Ms. McCrohan notified the town and department of her intent to retire from the department in August, 2010.

33. On or about July 2, 2010 Sgt. McCrohan requested, in writing, that she be granted compensation from the Union "sick bank."

34. Respondent Morisette requested that she provide an explanation of her request in writing.

35. Respondent Morisette responded by telling Ms. McCrohan that she was not entitled to benefits from the sick bank because she was no longer employed with the town and because she was experiencing financial hardship.

36. McCrohan submitted a request for reconsideration and informed the Union that she was employed by the department but not serving active schedules and that she was aware that other similarly situated Union members experiencing financial hardship were awarded sick bank benefits far in excess of those she requested.

37. The Union declined to reply to the second request.

38. Ms. McCrohan was diagnosed with PTSD and declared unfit for duty even with reasonable accommodation.  The cause of the PTSD was determined to be the harassment sustained at work in combination with traumatic events she observed as an officer.

## CLAIMS

## COUNT I – VIOLATION OF M.G.L.C. 151B – DISCRIMINATION BASED ON GENDER, SEXUAL ORIENTATION, AND/OR DISABILITY

39. The complainant restates all facts in paragraphs 1-36 as if expressly stated herein.

40. Based on the foregoing facts, the Complainant was denied the rights and entitlements of membership from the Uxbridge Local, 123 and from Respondents Morisette and Bergeron based on her gender, sexual orientation and or disability.

41. Based on the foregoing facts, the Complainant was harassed, defamed and subject to a hostile work environment caused by the conduct of the Uxbridge Local, 123 and from Respondents Morisette and Bergeron based on her gender, sexual orientation and or disability.

42. Based on the foregoing facts, the Complainant was retaliated against and denied the rights and entitlements of membership from the Uxbridge Local, 123 and from Respondents Morisette and Bergeron based on her Complaint of discrimination based on gender, sexual orientation and or disability.

## COUNT II – VIOLATION OF M.G.L. c. 151B – Retaliation

43. The Plaintiff restates and incorporates by reference paragraphs 1-40 as if stated fully herein.

44. The Plaintiff did engage in a form of protected activity when she complained of discriminatory conduct and/or treatment.

45. The defendants did retaliate against her by denying her rights of membership, shunning her, publically ridiculing her, and otherwise attempting to discredit, harass, intimidate, and/or coerce her from exposing violations of M.G.L. c. 151B.

## COUNT III- DEFAMATION

46. The Plaintiff restates and incorporates by reference paragraphs 1-43 as if stated fully herein.

47. The defendants did publish false statements about the plaintiff which they knew and/or should have known to be false.

48. The defendants did publish damaging statements about the plaintiff with malicious intent.

49. The plaintiff did suffer damage to her reputation, extreme emotional distress, and other damages as a direct and proximate result of the publication of false statements.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

50. The Plaintiff restates and incorporates by reference paragraphs 1-47 as if stated fully herein.

51. The defendants did engage in a pattern of intentional conduct with the intent and purpose of causing extreme emotional distress in the plaintiff.

52. The conduct of the defendants, as described herein, was extreme, outrageous, and outside the bounds of what can be expected in normal society both objectively and subjectively.

53. The plaintiff did suffer extreme emotional distress and suffered a severe relapse of PTSD that created substantial and permanent emotional and psychological injury to the plaintiff which has been attested to by at least four licensed medical doctors and forced the Plaintiff to seek early disability retirement from her career as a law enforcement officer.

## COUNT V –NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

54. The Plaintiff restates and incorporates by reference paragraphs 1-51 as if stated fully herein.

55. The conduct of the defendants, as described herein, was extreme, outrageous, and outside the bounds of what can be expected in normal society both objectively and subjectively.

56. The plaintiff did suffer extreme emotional distress as a direct and proximate result of the conduct of the defendants.

## COUNT VI – VIOLATION OF 42 U.S.C. §2000 – DISCRIMINATION BASED ON GENDER, SEXUAL ORIENTATION, AND/OR DISABILITY

57. The complainant restates all facts in paragraphs 1-56 as if expressly stated herein.

58. Based on the foregoing facts, the Complainant was denied the rights and entitlements of membership from the Uxbridge Local, 123 and from Respondents Morisette and Bergeron based on her gender, sexual orientation and or disability.

59. Based on the foregoing facts, the Complainant was harassed, defamed and subject to a hostile work environment caused by the conduct of the Uxbridge Local, 123 and from Respondents Morisette and Bergeron based on her gender, sexual orientation and or disability.

60. Based on the foregoing facts, the Complainant was retaliated against and denied the rights and entitlements of membership from the Uxbridge Local, 123 and from

Respondents Morisette and Bergeron based on her Complaint of discrimination based on gender, sexual orientation and or disability all in violation of 42U.S.C. s. 2000 et seq.

61. As a result, McCrohan has suffered extreme emotional distress rendering her incapable of performing the essential functions of the profession of a peace officer, has lost back wages, has lost future wages and compensation, and continues to suffer injuries to this day.

## COUNT VII – VIOLATION OF 42 U.S.C. §2000 – RETALIATION FOR MAKING A COMPLAINT BASED ON GENDER, SEXUAL ORIENTATION, AND/OR DISABILITY

62. The complainant restates all facts in paragraphs 1-36 as if expressly stated herein.

63. Based on the foregoing facts, the Complainant was denied the rights and entitlements of membership from the Uxbridge Local, 123 and from Respondents Morisette and Bergeron based on her gender, sexual orientation and or disability.

64. Based on the foregoing facts, the Complainant was harassed, defamed and subject to a hostile work environment caused by the conduct of the Uxbridge Local, 123 and from Respondents Morisette and Bergeron based on her gender, sexual orientation and or disability.

65. Based on the foregoing facts, the Complainant was retaliated against and denied the rights and entitlements of membership from the Uxbridge Local, 123 and from Respondents Morisette and Bergeron based on her Complaint of discrimination based on gender, sexual orientation and or disability all in violation of 42U.S.C. s. 2000 et seq.

66. As a result, McCrohan has suffered extreme emotional distress rendering her incapable of performing the essential functions of the profession of a peace officer, has lost back

wages, has lost future wages and compensation, and continues to suffer injuries to this day.

## PRAYER FOR RELIEF

67. The Plaintiff restates and incorporates by reference paragraphs 1-54 as if stated fully herein.

68. The combination of harassment, public ridicule, publication of false and malicious statements and retaliation have been diagnosed as causing a permanent relapse and exacerbation of Ms. McCrohan's PTSD, rendering her unfit to perform the essential functions of her job.

69. As a result, Ms. McCrohan has suffered from constant anxiety, lack of self esteem, stress, depression, loss of sleep and other symptoms caused by the disease.

70. As a result, Ms. McCrohan has been required to undergo extensive treatment including in-patient and outpatient treatment, prescription drugs and more.

71. As a result, Ms. McCrohan has been stripped of her professional reputation, prestige and her profession as an officer in which she worked for fifteen years, obtained a masters degree and intended to pursue until her retirement.

72. Ms. McCrohan is entitled to back pay dating to the date of the first Notice to the defendants of discriminatory acts towards Ms. McCrohan, front pay in an amount equal to the future values of her salary as a sergeant until the age of retirement, compensation for past and future medical treatment, compensation for extreme emotion distress, interest and attorneys fees.

73. The Respondents, individually and otherwise, should be enjoined from engaging in future discriminatory conduct and compelled to undergo appropriate training in order to achieve that end.

74. The Plaintiff requests any other remedies that this honorable Court deems just and fair.

*The Plaintiff demands a trial by jury for all matters set forth herein and all matters for which she is so entitled*.

Respectfully submitted by counsel,

/s/Simon B. Mann
665301
/s/John T. Martin
BBO 636759
Mann|Martin, LLP
1071 Worcester Road, Suite 42
Framingham, MA 01701
508-270-0500
508-270-0515
john@sbmannlaw.com